UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEAN Y. DENIS,

                    Plaintiff,

          -v-

THE TOWN OF HAVERSTRAW, and POLICE
OFFICER McMANUS (Badge/ID No. 235),

                    Defendants.

---

Case No. 10-CV-669 (KMK)

OPINION AND ORDER

Appearances:

Jeffrey S. Antin, Esq.
Antin Ehrlich & Epstein, LLP
New York, NY 10018
*Counsel for Plaintiff*

Carl Steven Sandel, Esq.
Drew William Sumner, Esq.
Morris Duffy Alonso & Faley
New York, NY 10006
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

          Jean Y. Denis ("Plaintiff") brings this diversity action against the Town of Haverstraw

and Police Officer McManus ("Officer McManus") in his official capacity (collectively,

"Defendants").  Plaintiff alleges that he was injured by the negligence of Officer McManus in

directing Plaintiff's car across a railroad crossing at the intersection of Short Clove Road and

Route 9W in the Town of Haverstraw, New York, and that as a result, Plaintiff's car was hit by

an oncoming CSX train.  Defendants move for summary judgment.  For the reasons stated

herein, Defendants' motion is granted.

<u>I. Background</u>

<u>A. Facts</u>

The relevant facts, which detail the events leading up to Plaintiff's car being struck by a CSX train, are taken primarily from the Parties' Local Civil Rule 56.1 Statements.  Any disputes are noted herein, but as discussed below, do not determine the outcome of the motion.  On November 5, 2008, at approximately 6:35 p.m., Officer McManus, of the Town of Haverstraw Police Department, responded to a two car accident on Route 9W near its intersection with Short Clove Road in the Town of Haverstraw, New York.  (Defs.' Statement of Material Facts Pursuant to Local R. 56.1 ("Defs.' 56.1") ¶ 1; Pl.'s Statement of Material Facts Pursuant to Local R. 56.1 ("Pl.'s 56.1") ¶ 1.)  Police Officer De La Rosa was also at the accident scene and was directing traffic while Officer McManus completed the accident report.  (Defs.' 56.1 ¶ 2; Dep. of Police Officer McManus ("McManus Dep.") 21:16-22:24.)  Defendants claim that Officer McManus parked his police car on the shoulder of Route 9W, just south of its intersection with Short Clove Road (Defs.' 56.1 ¶ 1), while Plaintiff claims that there were two police cars blocking the intersection of Route 9W and Short Clove Road, (Pl.'s 56.1 ¶ 1).  At approximately 7:00 p.m., Plaintiff was driving south-west on Short Clove Road in a 1991 Mercedes Benz 300 SE and approached the intersection of Short Clove Road and Route 9W.  (Defs.' 56.1 ¶ 3.)  Plaintiff stopped his car on Short Clove Road behind the railroad tracks, which cross Short Clove Road and run parallel to Route 9W, and waited for the officers to clear the accident on Route 9W.  (Defs.' 56.1 ¶ 4; Pl.'s 56.1 ¶ 4.)  Plaintiff claims that he was waiting for the police officers to move their cars so he could cross the train tracks and turn onto Route 9W.  (Pl.'s 56.1 ¶ 4; Dep. of Jean Y. Denis ("Denis Dep.") 26:25-27:10.)

2

There is a dispute of fact as to how far behind the train tracks Plaintiff stopped his car. During Plaintiff's hearing pursuant to New York General Municipal Law § 50-h, he stated that he stopped his car approximately twelve to fourteen feet from the tracks.  (50-h Hr'g of Jean Y. Denis ("Denis 50-h Tr.") 17:13-24.)  However, during his deposition, Plaintiff stated several times that he was approximately four to five feet behind the tracks.  (Denis Dep. 23:18-21, 25:16-20, 34:14-16, 87:20-24.)  Officer McManus testified at his deposition that when he first saw Plaintiff's car, it was about one or two feet away from the railroad tracks.  (McManus Dep. 29:3-7.)  Again, the dispute is not relevant here.

When Plaintiff stopped his car on Short Clove Road on the far side of the railroad tracks, there were no cars between his vehicle and Route 9W.  (Defs.' 56.1 ¶ 5; Pl.'s 56.1 ¶ 5.)  The railroad crossing gates were up (Pl.'s 56.1 ¶ 6), and Plaintiff's car was positioned between the crossing gate farthest from Route 9W and the train tracks, (Denis Dep. 29:17-30:24, 33:10-17). Defendants have measured the exact distances from the railroad tracks to each crossing arm and the distance from the tracks to the railroad crossings arm closest to Route 9W is 21 feet, 6 inches, while the distance from the tracks to the railroad crossing gate farthest from Route 9W (where Plaintiff's car was stopped) is 52 feet, 0 inches.  (Aff. of Lt. Martin Lund ¶¶ 6-7.) Therefore, the Court disregards contradictory statements regarding these distances from Plaintiff's 56.1 Statement ¶ 6 and from Officer McManus' deposition testimony, though the precise distances are not dispositive here.  Defendants also have included in the record the official specifications for Plaintiff's car and the Court notes that the car measures 202.6 inches in length.  (Decl. in Supp. of Mot. for Summ. J. ("Defs.' Decl.") Ex. I.)

Plaintiff and Defendants give different accounts of the events which led to Plaintiff's car being struck by the CSX train.  Officer McManus claims that when he first noticed Plaintiff's

3

car, Plaintiff was stopped about one to two feet from the railroad tracks and Officer De La Rosa

was directing the car to back up by "putting his hands out and pushing them away from his body

and yelling at the driver to back up repeatedly . . . ." (McManus Dep. 29:3-24.)  According to

Officer McManus, he then got out of his patrol car on Route 9W and assisted Officer De La

Rosa with "giving the verbal commands and the hand signals for [Plaintiff] to back up." (*Id.* at

33:9-12.)  Officer McManus claims that he and De La Rosa were signaling for Plaintiff to move

his car back because the railroad crossing gates had come down and Plaintiff was only a foot or

two away from the tracks, which was in the "danger zone" for being struck by the train. (*Id.* at

33:17-34:12; Defs.' 56.1 ¶¶ 6-8; Defs.' Decl. Ex. C (Police Accident Report).)  Although

Plaintiff was inside the crossing arm, Officer McManus believed that there was enough room

between the tracks and the crossing arm for Plaintiff to back up and safely avoid the train.

(Defs.' 56.1 ¶ 8; McManus Dep. 41:19-42:3.)  Officer McManus testified that the crossing arms

were already down when he first observed Plaintiff's car.  (McManus Dep. 34:13-35:6.)  He

claims that for several seconds, Plaintiff did not react to their commands to back up and that four

or five seconds later, Plaintiff started to inch his vehicle forward onto the tracks, at which point

Officer McManus started screaming and signaling "stop, stop[;] [g]et back, get back." (*Id.* at

38:6-39:6.)  However, Plaintiff did not back up and instead stopped his car halfway on the

railroad tracks.  (*Id.* at 39:7-11.)  About four or five seconds later, McManus observed the lights

from the southbound train approaching the crossing (*id.* at 40:7-23), and ran towards Plaintiff's

car, at which point Plaintiff exited the car and ran away from the train, (*id.* at 42:5-15, 42:22-

44:11).  The train then struck Plaintiff's vehicle.  (*Id.* at 44:13-18.)

 Plaintiff claims that after he waited approximately fifteen to twenty minutes on Short

Clove Road, the accident scene on Route 9W had been cleared, and Officer McManus signaled

to Plaintiff to cross the tracks by lifting both of his arms and moving them towards his body. (Pl.'s 56.1 ¶ 7; Denis Dep. 35:3-5, 90:21-93:18; Denis 50-h Tr. 25:13-26:11.) Plaintiff claims that at this point, the railroad crossing arms were still up (Denis Dep. 97:6-13; Denis 50-h Tr. 23:16-19), and Plaintiff moved his car about halfway onto the railroad tracks, (Denis Dep. 94:2-16). Plaintiff claims that once his car was halfway onto the tracks, Officer McManus began signaling to Plaintiff to back up (*id.* at 94:14-22), and Plaintiff then noticed the crossing arms coming down and the train approaching, (*id.* at 97:6-10). The CSX Accident Report prepared shortly after the accident also states "driver of 1991 Mercedes Benz was waived past the accident and started to enter the railroad crossing when the signal lights started to flash[;] [t]he motorist stopped his vehicle in the crossing." (Decl. in Opp'n to Defs.' Mot. for Summ. J ("Pl.'s Decl.") Ex. B.) Plaintiff claims that about one and a half seconds elapsed between the time that Officer McManus signaled him to move forward and when the crossing arms started moving down. (Denis Dep. 100:6-16.) Plaintiff claims he could not back up because the crossing arm was blocking him (*id.* at 99:6-8, 101:21-102:6), and that when he saw the train he began to panic, (*id.* at 95:2-4).[1] Plaintiff testified that Officer McManus approached his car and yelled "get out of that car a train is coming," at which point Plaintiff jumped out of the car and ran away from the approaching train. (*Id.* at 102:14-103:25, 105:3-10.) Plaintiff claims that he fell as he was exiting the car and sustained injuries to his neck, back, and shoulder. (Denis 50-h Tr. 4:5-19; Denis Dep. 45:24-47:18, 48:22-49:3, 58:5-79:20, 103:23-105:2.) Seconds later, the train hit Plaintiff's car. (Denis Dep. 105:5-10.)

---

[1] The Court notes that the measurements of the site indicate that there was enough room on either side of the tracks for Plaintiff's car to fit within the crossing gate and still be clear of the tracks.

B. Procedural History

Plaintiff filed his Complaint in New York State Supreme Court, Rockland County on December 14, 2009, naming the Town of Haverstraw, Police Officer McManus, CSX Corporation, CSX Transportation, Inc., CSX Intermodal, Inc., and David Harmon as Defendants. The Complaint alleges two causes of action, one alleging negligence against the Town of Haverstraw and Officer McManus (Compl. ¶¶ 12-22), and the other alleging negligence against the CSX Defendants and David Harmon, (id. ¶¶ 23-42). A Notice of Removal was filed with this Court on January 28, 2010, and the case was removed pursuant to 28 U.S.C. §§ 1441 and 1332. (Dkt. No. 1.)[2] Defendants answered on January 29, 2010 (Dkt. No. 2), and February 17, 2010, (Dkt. No. 3). Plaintiff filed a motion to remand on March 2, 2010 (Dkt. Nos. 5, 6), which was denied by the Court on March 3, 2010 for failure to follow the Court's individual rules, (Dkt. No. 7). Plaintiff did not attempt to re-file the motion.[3] On January 10, 2011, it was stipulated that all claims against Defendants CSX Corporation, CSX Transportation, Inc., and CSX Intermodal, Inc. were dismissed with prejudice. (Dkt. No. 21.)[4] On June 22, 2011,

---

[2] The Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000. Plaintiff is a resident of New Jersey. (Notice of Removal ¶ 10 (Dkt. No. 1).) Defendants CSX Corporation, CSX Transportation, Inc., and CSX Intermodal, Inc. are incorporated in Virginia with their principal places of business in Florida. (Id. ¶ 11.) The Town of Haverstraw is a municipal corporation formed pursuant to the law of the State of New York, and Officer McManus is a resident of New York. (Id. ¶ 12.)

[3] In any event, the proffered basis for the motion — that complete diversity did not exist because Plaintiff was a New York resident — is inconsistent with Plaintiff's § 50-h hearing and deposition testimony, where he stated that he was a resident of New Jersey, and had lived in Englewood, New Jersey for the past fourteen years. (Denis 50-h Tr. 3:14-16; Denis Dep. 36:25-37:3.) Therefore, there appears to be complete diversity.

[4] Plaintiff has also stated that he intended to terminate David Harmon as a Defendant, though David Harmon still appears as a Defendant on the docket.

remaining Defendants Town of Haverstraw and Police Officer McManus filed their Motion for

Summary Judgment.  (Dkt. No. 27.)

II. Discussion

A. Standard of Review

Summary judgment may be granted where it is shown "that there is no genuine dispute as

to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same).  "When ruling on a

summary judgment motion, the district court must construe the facts in the light most favorable

to the non-moving party and must resolve all ambiguities and draw all reasonable inferences

against the movant."  *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003);

*see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (noting that a court

must draw all reasonable inferences in the nonmovant's favor).

A party seeking summary judgment bears the burden of establishing that no genuine

issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d

Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is

sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential

element of the nonmovant's claim.  In that event, the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations

omitted).  "When the moving party has carried its burden under Rule 56, its opponent must

do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted);

*see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006)

7

("[S]peculation alone is insufficient to defeat a motion for summary judgment."). "A fact is 'material' when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). At summary judgment, a court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). A court's goal should be "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.

B. Analysis – Governmental Function Immunity Defense

Defendants argue that they are entitled to judgment as a matter of law because under New York law, a "municipal defendant is immune from liability for conduct involving the exercise of discretion and reasoned judgment." (Mem. of Law in Supp. of Defs.' Mot. for Summ. J ("Defs.' Mem.") 5 (internal quotation marks omitted).) Plaintiff responds that even if Defendants were performing a discretionary function, they can be held liable for their negligent actions where they have established a "special relationship" with Plaintiff. (Mem. of Law in Opp'n to Defs.' Mot. for Summ. J ("Pl.'s Mem.") 3.) However, in *McLean v. City of New York*, 905 N.E.2d 1167, 1174-75 (N.Y. 2009) and *Valdez v. City of New York*, 960 N.E.2d 356, 361-62 (N.Y. 2011), the New York Court of Appeals unequivocally held that a municipality cannot be held liable for the negligent acts of its employees when they are performing discretionary governmental functions, regardless of the existence of any "special relationship."[5]

---

[5] The Parties did not address *McLean* or *Valdez* in their motion papers. On March 6, 2012, the Court issued an Order directing the Parties to submit supplemental briefs addressing these cases. (Dkt. No. 38.) In his supplemental brief, Plaintiff argues that the facts in the instant case are distinguishable from those in *McLean* and *Valdez*, because he claims that here "the defendant's agent unequivocally assumed a duty [] directly to the plaintiff." (Supplemental Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Supplemental Mem.") 1.) However,

Although New York State has waived sovereign immunity on behalf of itself and its

municipal subdivisions, "the common-law doctrine of governmental immunity continues to

shield public entities from liability for discretionary actions taken during the performance of

government functions." *Valdez*, 960 N.E.2d at 361; *see also In re World Trade Cntr. Bombing

Litig.*, 957 N.E.2d 733, 749 (N.Y. 2011) ("[W]hen official action involves the exercise of

discretion, the officer is not liable for the injurious consequences of that action even if resulting

from negligence or malice." (quoting *Tango v. Tulevech*, 459 N.E.2d 182, 185 (1983)); *Haddock

v. City of New York*, 553 N.E.2d 987, 991 (N.Y. 1990) ("Governmental immunity . . . does not

attach to every act, but when official action involves the exercise of discretion or expert

judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is

not answerable in damages for the injurious consequences of that action.").  The Court of

Appeals has reasoned that this limitation on liability "reflects separation of powers principles."

*Valdez*, 960 N.E.2d at 362.  It also is intended to ensure that public servants are free to exercise

their decision-making authority without concerns of limitless liability, and it "'reflects a value

judgment that — despite injury to a member of the public — the broader interest in having

government officers and employees free to exercise judgment and discretion in their official

functions . . . outweighs the benefits to be had from imposing liability for that injury.'"  *Id.*

(quoting *Mon v. City of New York*, 579 N.E.2d 689, 692 (N.Y. 1991)).

---

this argument is off the mark, as it does not address *McLean's* holding that regardless of the
assumption of a "special duty," there can be no municipal liability for the discretionary acts of
municipal agents performing governmental functions.  Plaintiff also claims that "the defendant's
act of merely directing plaintiff's vehicle onto the tracks before it was aware of the oncoming
train was clearly ministerial in nature."  (*Id.* at 1-2.)  However, Plaintiff does not elaborate on
why the act of directing traffic here is "clearly ministerial," nor does he offer any authority for
the proposition that directing vehicle traffic is a ministerial, rather than a discretionary act.

In New York, cases involving governmental tort liability have long distinguished between discretionary and ministerial acts of government officials. *See McLean*, 905 N.E.2d at 1173. In *McLean*, the Court of Appeals analyzed four of its prior decisions which had dictated the scope of municipal tort liability for discretionary and ministerial acts and which were arguably in conflict. In reviewing *Tango v. Tulevech*, 459 N.E.2d 182 (N.Y. 1983) and *Lauer v. City of New York*, 733 N.E.2d 184 (N.Y. 2000), the *McLean* court noted that these cases held that "discretionary municipal acts may *never* be a basis for liability, while ministerial acts may support liability only where a special duty is found." *McLean*, 905 N.E.2d at 1173 (emphasis added). However, two more recent cases, *Pelaez v. Seide*, 810 N.E.2d 393 (N.Y. 2004) and *Kovit v. Estate of Hallums*, 829 N.E.2d 1188 (N.Y. 2005), had called the distinction between discretionary and ministerial acts into question. In *Pelaez*, the Court of Appeals commented that "[a]s a rule, municipalities are immune from tort liability when their employees perform discretionary acts . . . . In a narrow exception to the rule, we have upheld tort claims when plaintiffs have established a 'special relationship' with the municipality." *McLean*, 905 N.E.2d at 1173 (quoting *Pelaez*, 810 N.E.2d at 395)). In *Kovit*, the Court of Appeals, relying on *Pelaez*, indicated that "municipalities generally enjoy immunity from liability for discretionary activities they undertake through their agents, except when plaintiffs establish a 'special relationship' with the municipality." *Id.* (quoting *Kovit*, 892 N.E.2d at 1189). *Kovit* and *Pelaez* thus suggested that municipalities could be held liable in tort for the discretionary actions of their employees where a "special relationship" existed, whereas *Tango* and *Lauer* had arguably limited the "special relationship" exception to ministerial acts and had upheld absolute immunity for discretionary acts. The *McLean* court admitted that the cases thus "seem[ed] inconsistent." *Id.* But, as the *McLean* court emphatically concluded:

> If there is an inconsistency, we resolve it now: *Tango* and *Lauer* are right, and any contrary inference that may be drawn from the quoted language in *Pelaez* and *Kovit* is wrong.  Government action, if discretionary, *may not* be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general.

*Id.* at 1173-74 (emphasis added).

The Court of Appeals then reaffirmed in *Valdez*, that "even if a plaintiff establishes all elements of a negligence claim, a state or municipal defendant engaging in a governmental function can avoid liability if it timely raises the [government function immunity] defense and proves that the alleged negligent act or omission involved the exercise of discretionary authority."  *Valdez*, 960 N.E.2d at 362.  The Court of Appeals then addressed the "lingering confusion concerning the special duty rule (establishing a tort duty of care) and the governmental function immunity defense (affording a full defense for discretionary acts . . .)," and reaffirmed that the "special duty doctrine is [] *not* an exception to governmental function immunity" for discretionary actions.  *Id.* at 363 (emphasis added).

The Parties do not dispute that Officer McManus was engaged in a governmental function when he directed Plaintiff to move his car, and it is well settled under New York law that "traffic regulation is a classic example of a governmental function undertaken for the protection and safety of the public."  *Balsam v. Delma Eng'g Corp.*, 688 N.E.2d 487, 489 (N.Y. 1997).  Therefore, as a threshold matter, the Court must determine whether Officer McManus was acting in a discretionary or a ministerial capacity when he directed Plaintiff to move his car.[6]

---

[6] In *Valdez*, the court rested its holding (affirming the dismissal of the case by the Appellate Division) on the ground that regardless of whether the police were performing a ministerial or discretionary function, the plaintiff had failed to demonstrate that the defendant owed her any special duty of care.  960 N.E.2d at 365, 368.  The court noted that the situation was the same in *McLean* and *Dinardo v. City of New York*, 921 N.E.2d 585 (N.Y. 2009), where "plaintiffs . . . failed to establish that a special duty existed, thereby rendering any further

If Officer McManus was acting in a discretionary capacity, then whether he established any "special relationship" with Plaintiff is irrelevant, as governmental immunity for discretionary acts is a complete defense to liability regardless of the existence of a "special relationship." *Valdez*, 960 N.E.2d at 363; *see also Wiener v. City of New York*, No. 10-CV-17073, 2011 WL 4975350, at *1 (N.Y. Sup. Ct. Oct. 19, 2011) ("It is well settled that '[g]overnment action, if discretionary, may not be a basis for liability.'" (alteration in original) (quoting *McLean*, 905 N.E.2d at 1173)). "While the line separating discretionary and ministerial action may sometimes blur, it is clear that 'discretionary . . . acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result.'" *Lewis v. State*, 892

---

discussion concerning the availability of the governmental immunity defense unnecessary." *Id.* at 365 n.7. However, in *Valdez*, the defendant did not file a pretrial motion to dismiss or seek summary judgment invoking the governmental function immunity defense, but instead proceeded to trial and argued that the plaintiff had failed to establish a special relationship between herself and the police officer. The issue of whether the acts in question where ministerial or discretionary was thus not addressed in the lower courts, except in the Appellate Division dissent, and the issue before the Court of Appeals was the existence of a special relationship. *Id.* at 360-61.

Here, however, Defendants have raised the defense of governmental function immunity at the summary judgment stage, so as a threshold matter, the Court addresses whether that defense is available before determining whether Plaintiff has established the existence of any "special relationship." *See, e.g.*, *Applewhite v. Accuhealth, Inc.*, 934 N.Y.S.2d 164, 166 (App. Div. 2011) (explaining that "as a threshold issue" the court must "determine the capacity in which the City was acting" before determining whether to apply the special relationship test); *Sherpa v. N.Y.C. Health & Hosps. Corp.*, 934 N.Y.S.2d 463, 464 (App. Div. 2011) (affirming summary judgment for defendant where municipal employee was performing discretionary function without conducting any analysis of the existence of a special relationship); *Clarke v. City of New York*, 920 N.Y.S.2d 913, 913-14 (App. Div. 2011) (holding that the "issue of whether a special relationship existed need not be reached" where defendant made a prima facie showing that the government employees were engaged in discretionary functions, and thus summary judgment should have been granted); *Wiener v. City of New York*, No. 10-CV-17073, 2011 WL 4975350, at *1 (N.Y. Sup. Ct. Oct. 19, 2011) (dismissing complaint, even though there were triable issues of fact as to whether a special relationship existed, where "the City's actions were discretionary, [and thus] there is simply no basis for liability").

N.Y.S.2d 583, 585 (App. Div. 2009) (quoting *Haddock*, 553 N.E.2d at 991)); *see also Valdez*, 960 N.E.2d at 364 (noting that in determining whether the action of a government employee is discretionary and thus "cloaked with [] governmental immunity," courts should analyze "'the functions and duties of the actor's particular position and whether they inherently entail the exercise of some discretion and judgment'" (quoting *Mon*, 579 N.E.2d at 691)).  The availability of the defense thus turns on "whether the conduct giving rise to the claim is related to an exercise of that discretion."  *Id.*; *see also Kenavan v. City of New York*, 517 N.E.2d 872, 877 (N.Y. 1987) (holding that "liability will not be imposed where the [official's] conduct involves the exercise of professional judgment such as electing one among many acceptable methods of carrying out tasks, or making tactical decisions that, in retrospect show poor judgment, but judgment nonetheless"), *superseded by statute on other grounds*, N.Y. Gen. Mun. Law § 205-a.

The official conduct here involved a police officer directing traffic — here a car positioned near railroad tracks.  On its face, the process of directing traffic smacks of instantaneous judgment calls, rather than a pre-programmed means of achieving a compulsory result.[7]  In *Kovit v. Estate of Hallums*, the Court of Appeals considered a consolidated appeal of two cases, each of which involved a police officer who instructed a driver to move a car, resulting in injury to the plaintiffs.  In each case, the Court of Appeals found that the officer was exercising his discretion in directing each individual to move his or her car.  *Kovit*, 829 N.E.2d at 1190 ("The police officer was exercising his discretion when he told Hallums to move her car."), 1192 (noting that officer had to "weigh the danger of leaving the car in a dangerous situation . . .

---

[7] Although Plaintiff claims that the act of directing Plaintiff's vehicle onto the train tracks before the officers were aware of the oncoming train was "clearly ministerial in nature" (Pl.'s Supplemental Mem. 2), Plaintiff has provided no analysis and has cited no case law to support that conclusory assertion.

against the danger posed by having the driver move the car [,]" a decision which "calls for

discretion").  Although *McLean* later found that *Kovit* had improperly applied the special

relationship test, the *McLean* court did not question the *Kovit* court's conclusion that the police

officers were exercising a discretionary function in directing the individuals to move their cars.

 Similarly, lower New York courts have consistently found that when police officers

direct traffic, they are exercising a discretionary function.  For example, in *Santos v. County of

Westchester*, 916 N.Y.S.2d 209 (App. Div. 2011), the plaintiffs were directed by a New York

City Traffic enforcement agent to make a left turn at an intersection, and as they turned a bus

also turned into the intersection and collided with plaintiffs' car.  The court affirmed a grant of

summary judgment for the City, holding that it was entitled "to judgment as a matter of law

[because it had] establish[ed] that its traffic enforcement agent was performing a discretionary

function for which it is immune from liability."  *Id.* at 210.  This result is in line with numerous

other decisions finding that traffic direction is a discretionary function.  *See, e.g.*, *Devivo v.

Adeyemo*, 894 N.Y.S.2d 747, 747 (App. Div. 2010) ("The officers' alleged negligence [in

configuring a barricade at a public event] cannot support municipal liability as it involved

discretionary acts in managing pedestrian and vehicular traffic undertaken in furtherance of

public safety."); *Shands v. Escalona*, 843 N.Y.S.2d 504, 504 (App. Div. 2007) (noting that any

negligence of police officer in directing plaintiff back onto the highway when her exit was

flooded and which led to her being struck by an oncoming tractor-trailer "was committed in the

course of a discretionary act"); *Lyons v. Subhan*, No. 09-CV-20334, 2011 WL 5829606, at *1

(N.Y. Sup. Ct. Nov. 17, 2011) (granting summary judgment for the City because the acts of its

traffic enforcement agent were discretionary); *Wittorf v. City of New York*, 928 N.Y.S.2d 842,

847-48 (Sup. Ct. 2011) (discussing "several cases examining municipal liability for decisions by

police officers concerning traffic management which lead to injury, all [holding] that the officers were engaged in discretionary governmental activity that is immune from a finding of liability" (collecting cases).[8]  Therefore, the weight of authority in New York clearly supports the position that a police officer is performing a discretionary act when he makes decisions relating to traffic management.

Here, the undisputed facts support the finding that Officer McManus was exercising his discretion and professional judgment in reaction to the situation when he signaled to Plaintiff to move his car.  Plaintiff admits that he stopped his car on Short Clove Road before it reached the train tracks and waited for the police officers to finish clearing the accident on Route 9W so that he could cross the tracks.  (Pl.'s 56.1 ¶ 4.)  Plaintiff stated several times during his deposition

---

[8] In *Sorrentino v. Mayerson*, 918 N.Y.S.2d 579 (App. Div. 2011), the plaintiff was injured when police officers failed to properly secure an accident scene by putting flares or cones in the roadway.  The Appellate Division upheld the grant of summary judgment for the municipality, but based its holding on the lack of a "special duty" and did not conduct an analysis of whether the governmental function being performed was discretionary or ministerial.  It should be noted, however, that the County did not raise the governmental function immunity defense in that case, and instead argued that it could not be held liable in the absence of a special duty.  *Id.* at 579.

The Court also notes that there are several cases decided before 2009 which applied the "special relationship" test to claims arising out of alleged negligence in traffic regulation.  However, these cases were decided before *McLean* clarified that governmental function immunity for discretionary actions is an absolute defense, and the "special relationship" test therefore has no application.  *See, e.g.*, *Lynch v. State*, 831 N.Y.S.2d 228, 229-30 (App. Div. 2007) (granting judgment for state because of lack of special relationship between injured plaintiff and police officer who failed to set up road flares to block oncoming traffic); *Santoro v. City of New York*, 795 N.Y.S.2d 60, 61 (App. Div. 2005) (granting summary judgment to City for failure to properly direct traffic at scene of an accident because plaintiff failed to show a special relationship); *Eckert v. State*, 771 N.Y.S.2d 132, 133 (App. Div. 2004) (affirming grant of summary judgment for state where plaintiff was injured when police failed to light road flares at the scene of an accident, but applying special relationship test); *Kohn v. City of New York*, No. 06-CV-150018, 2008 WL 2265783, at *5 (N.Y. Sup. Ct. May 22, 2008) ("[I]n order for an injured party to hold a municipality liable for negligently performing traffic control or traffic regulation functions, the party must demonstrate that a special relationship existed between it and the municipality.").

that although he was not directed by the police to stop, he was waiting for a signal from one of the officers to proceed because he believed he could not drive through the accident scene without the authorization of the police.  (Denis Dep. 26:15-16 ("I could never go through without authorization of the police"), 26:20-22 ("Because how could I cross without the police finished to clear things up so that they could give me authorization to drive through?"), 29:10-13 ("Q: And you were waiting for authorization by a police officer to cross the tracks, is that correct?  A: Yes.").)  Plaintiff testified that about fifteen to twenty minutes later, he saw Officer McManus approach his car and signal Plaintiff to move forward, and then immediately signal him to move backward off the train tracks.  (Denis Dep. 35:3-5, 91:22-94:22.)  Officer McManus claims that he only directed Plaintiff to move backward, not forward.  However, regardless of which version of events is accurate, the situation clearly involved "an exercise of reasoned judgment" by Officer McManus in directing Plaintiff to move his car away from the railroad tracks.  This is not a situation where Officer McManus was adhering to a governing standard or rule with only one acceptable result; the situation called for judgment, and even if Officer McManus committed an "error of judgment" in directing Plaintiff to move his car as the train was approaching (which, to be clear, the Court is not saying), the governmental function immunity "defense precludes liability."  *Valdez*, 960 N.E.2d at 364 (internal quotation marks omitted).[9]

-------

[9] Additionally, this situation fits comfortably into the rationale behind according immunity for discretionary decisions of government actors.  A police officer directing traffic after securing an accident scene must be "free to exercise judgment and discretion in [his] official functions, unhampered by fear of second-guessing and retaliatory lawsuits."  *Mon*, 579 N.E.2d at 692 (internal quotation marks omitted); *see also Kovit*, 829 N.E.2d at 1190 ("If liability flowed from every negligent action, officials would be trained to shrink from their responsibility so as to avoid possible costs to their municipal employers.  We expect better of our government, and therefore protect the discretion of its agents so municipalities will encourage them to carry out their duties in the service of the public.").

Therefore, because Officer McManus was engaged in a discretionary function when his alleged negligence caused injury to Plaintiff, Defendants are entitled to judgment as a matter of law.[10]

### III. Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED. The Clerk of Court is respectfully directed to enter judgment for Defendants and to terminate the pending motion, (Dkt. No. 27). The Clerk of Court is also respectfully directed to close this case.

SO ORDERED.

Dated:      White Plains, New York
            March 30, 2012

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

---

[10] As Defendants are entitled to the defense of governmental function immunity, the Court does not address whether the emergency doctrine also bars Plaintiff's claims.

Service List:

Jeffrey S. Antin, Esq.
Antin Ehrlich & Epstein, LLP
49 West 37th Street
New York, NY 10018
(212) 221-5999
Email: jantin@aeelaw.com
*Counsel for Plaintiff*

Carl Steven Sandel, Esq.
Drew William Sumner, Esq.
Morris Duffy Alonso & Faley
Two Rector Street, 22nd Floor
New York, NY 10006
(212)-815-0658
(212)-766-1888
Email: csandel@mdafny.com
Email: dsumner@mdafny.com
*Counsel for Defendants*